of the property in the person appointed to receive it was not, either in the will or the instrument by which the power was exercised, dependent upon that person surviving the grantee of the power. The instrument executing the power of appointment took effect upon the execution and delivery, and Chase then became vested with the remainder; no power being reserved to divest it. In Matter of U. S. Trust Company, 175 N. Y. 304, 67 N. E. 614, the Court of Appeals discussed this provision of Laws 1893, p. 939, c. 452, and the real property law (chapter 417, p. 507, of the Laws of 1897), and their opinion seems to confirm the power of the Legislature to enact these laws. I think, therefore, that upon the execution of this power of appointment Chase became absolutely entitled to the remainder, as if his name had been inserted in the will as the remainderman, and as such he could convey the remainder, which was not in any sense contingent upon his surviving the life tenant. It would seem, therefore, that this conveyance of property to the life tenant, and her conveyance of the life estate to herself as an individual and owner of the remainder, terminated the trust. It follows that there was no person who had any interest in the property not a party to the partition action and that the title conveyed by the referee's deed was good.

The order, therefore, should be affirmed, with $10 costs and disbursements. All concur.

---

### LOEWE v. NEW YORK CITY RY. CO.

(Supreme Court, Appellate Division, First Department. November 8, 1907.)

CARRIERS—INJURIES TO PASSENGERS—INSTRUCTIONS.

    In an action against a street railway company for negligence in operating a car on which deceased was riding, resulting in his being thrown from the car while passing around a curve, it is error to instruct that, if the car was propelled at an unusual rate of speed, it became the duty of defendant's servants to give deceased notice of that fact, or indicate to him that he must exercise at that point increased care for his safety, since the precautions required by ordinary care were for the jury, and the effect was to charge as a matter of law that defendant knew or should have known that the curve was dangerous, and that it owed an imperative duty to warn passengers if the car was operated around the curve at an unusual rate of speed.

Appeal from Trial Term.

Action by Johanna Loewe against the New York City Railway Company. From a judgment for plaintiff, and an order denying a motion for a new trial, defendant appeals. Reversed, and new trial granted.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Henry L. Scheuerman (Bayard H. Ames, on the brief), for appellant.

William J. Lippman, for respondent.

LAUGHLIN, J. This is a statutory action to recover damages for the death of plaintiff's intestate, alleged to have been caused by

the negligence of the defendant in operating a car upon which he was a passenger, resulting in his being thrown from the car while it was passing around a slight curve in Central Park on the track traversing Central Park from Eighty-Sixth street on the west to Eighty-Fifth street in the east, known as the "Eighty-Sixth Street Cross-Town Line."

I am of opinion that the evidence tending to show that the car was operated at an unusual rate of speed while passing around this curve was sufficient to make the question of the defendant's negligence one for the jury; but I think the learned trial court committed an error in instructing the jury, which necessitates a new trial. In the main charge the court instructed the jury that:

"If you find that the car in question was propelled at an unusual rate of speed, then it became the duty of the defendant's servants to give plaintiff's intestate notice of that fact, or indicate to him in some way that he must exercise at that point increased care for his own safety."

To this charge the counsel for the defendant duly excepted. The effect of the charge was to instruct the jury, as matter of law, that the defendant knew or should have known that the curve was dangerous, and that it owed an imperative duty to its passengers to warn them, provided the car was operated along the track around the curve at an unusual rate of speed. The jury might have found that, in propelling the car around the curve at an unusual speed, ordinary care required that the passengers who were standing be notified; but I am of opinion that it could not be said that the curve was such that as matter of law the duty rested upon the defendant of notifying the passengers on approaching the curve at an unusual rate of speed.

The order, therefore, should be reversed, and a new trial granted, with costs to appellant to abide the event.

CLARKE and HOUGHTON, JJ., concur.

INGRAHAM, J. (concurring). The plaintiff's intestate was a passenger upon one of the surface cars of the defendant's road through one of the transverse roads of the Central Park at Eighty-Sixth street. This road crosses the Central Park, there being a slight curve to the west after the road leaves Eighth avenue and returning by a slight curve to the east. This curve is what is called "a curve of 600 feet radius"; but the curve is a slight one, without any sudden changes. The car started from Eighth avenue to cross the park about 11 o'clock at night on April 28, 1904. The deceased got upon the back platform of the car, and stood with his back to the dashboard, with his right hand on the stanchion that supports the roof, near the steps to the street. The only witness to the accident called by the plaintiff was a passenger who stood next to the deceased. He testified that after the car left Eighth avenue it started to go at a very great speed; that the car was going fast around the curve, and the first thing that he saw was that the deceased's heels were in the air and he turned right around and then fell off; that the witness was thrown forward, and his side went against what he called the "motor box"; that the passengers hollowed, and the conductor gave a signal to stop, and the car came to a standstill about 75 feet from the place where the

deceased fell off; that the deceased had a newspaper and a cigarette in his left hand, and was holding onto this stanchion with his right hand; that after the other passengers hollowed, but not immediately, the conductor gave the three bells which caused the car to come to a stop; that at the time the conductor was on the inside collecting fares. On behalf of the defendant several passengers testified that the car was going at its usual speed, and that there was no unusual jar or jolting going around the curve; and there was also testimony tending to show that the deceased was intoxicated at the time.

There was nothing in the situation that would require the employés of the defendant to anticipate that a passenger using ordinary care would be thrown from the car in going around such a curve, and there is no evidence that the jar was sufficient to cause a man in the exercise of ordinary care to fall off the platform, except that of a witness who testified that he was thrown against the motor box of the car; and the strong preponderance of evidence is that there was no improper or dangerous management of the car. The plaintiff relies upon the case of Lucas v. Met. St. R. Co., 56 App. Div. 405, 67 N. Y. Supp. 833; but it is clear that the facts in that case are quite different from the facts here. This case is very much like that of Fogerty v. Union Railway Co., 56 App. Div. 624, 67 N. Y. Supp. 1133, affirmed 171 N. Y. 670, 64 N. E. 1120, and the discussion of that case in Lucas v. Met. St. Ry. Co. shows that this case comes within the Fogerty Case.

I think, therefore, that the finding of the jury that the defendant was negligent was against the weight of evidence, and for that reason the order denying the motion for a new trial must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

PATTERSON, P. J., concurs.